UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
                                          :

FC HOLDINGS AB, et al.,              :     No. 09 Civ. 5466 (RJS)
                                           :     ECF CASE

       Plaintiffs,                    :

                                           :

                 -against-           :

                                           :

WELLS FARGO & COMPANY, et al.,   :

                                           :

       Defendants.                :

                                           :

--------------------------------------------------------------------x

 

# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

 

Douglas H. Flaum
Israel David
John W. Brewer
Eric A. Hirsch
FRIED, FRANK, HARRIS, SHRIVER
 & JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
(212) 859-8000
douglas.flaum@friedfrank.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

TABLE OF SOURCES.........................................................................................................v

PRELIMINARY STATEMENT ..........................................................................................1

THE PARTIES......................................................................................................................2

ARGUMENT ........................................................................................................................3

I.      THE SECTION 10(B) AND RULE 10B-5 CLAIMS FAIL FOR THE REASONS
        STATED IN THE CLASS ACTION BRIEF ...............................................................3

II.     FOUR ADDITIONAL ALLEGED MISSTATEMENTS FROM SOURCES
        CITED IN THE EQUITY COMPLAINT DO NOT SAVE THE FC PLAINTIFFS'
        CLAIMS .......................................................................................................................4

III.    THE FC PLAINTIFFS' BELATEDLY-DISCLOSED TRADING DETAILS
        REVEAL AN INABILITY TO PLEAD RELIANCE, CAUSATION, AND/OR
        DAMAGES WITH RESPECT TO MANY OF THEIR PURCHASES............................5

        A.      No Claim Regarding Statements Made Subsequent to Particular
                Plaintiffs' Last Purchases............................................................................5

        B.      No Claim Related to Purchases Corresponding to Immediate
                Sales and/or Subsequent Sales at a Profit .................................................5

        C.      No Claim Relating to Alleged Statements or Omissions Which Were
                Corrected Prior to Plaintiffs' Purchases....................................................6

IV.     FC PLAINTIFFS' AUCTION RATE SECURITIES CLAIMS FAIL ..............................8

        A.      Wachovia's Potential ARS Exposure Was Publicly Disclosed ..............9

        B.      FC Plaintiffs Do Not Allege Scienter ..................................................11

        C.      FC Plaintiffs Do Not Allege Falsity.....................................................14

        D.      FC Plaintiffs' GAAP Allegations Relating to ARS Fail.......................15

CONCLUSION....................................................................................................................17

## TABLE OF AUTHORITIES

CASES                                                                                          Page(s)

*Acito v. IMCERA Group, Inc.*,
    47 F.3d 47 (2d Cir. 1995) .......................................................................16

*Caiafa v. Sea Containers Ltd.*,
    525 F. Supp. 2d 398 (S.D.N.Y. 2007).................................................15, 16

*Coronel v. Quanta Capital Holdings, Ltd.*,
    2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) ........................................12

*DiLeo v. Ernst & Young*,
    901 F.2d 624 (7th Cir. 1990) ...............................................................16

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)........................................................................6 n.7, 11

*ECA v. J.P. Morgan Chase, Co.*,
    553 F.3d 187 (2d Cir. 2009)........................................................ *passim*

*In re Aegon N.V. Sec. Litig.*,
    2004 WL 1415973 (S.D.N.Y. June 23, 2004) ......................................15

*In re Bausch & Lomb, Inc. Sec. Litig.*,
    592 F. Supp. 2d 323 (W.D.N.Y. 2008) ................................................13

*In re Centerline Holdings Co. Sec. Litig.*,
    613 F. Supp. 2d 394 (S.D.N.Y. 2009)..................................................14

*In re Citigroup Auction Rate Sec. Litig.*,
    2009 WL 2914370 (S.D.N.Y. Sept. 11, 2009).................................15 n.13

*In re Connetics Corp. Sec. Litig.*,
    542 F. Supp. 2d 996 (N.D. Cal. 2008) .............................................9 n.9

*In re Corning Inc. Sec. Litig.*,
    2004 WL 1056063 (W.D.N.Y. Apr. 9, 2004), *aff'd*,
    2005 WL 714352 (2d Cir. Mar. 30, 2005)............................................16

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)........................................................6 n.7

*In re Keyspan Corp. Sec. Litig.*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) .................................................10

*In re Morgan Stanley & Van Kampen Mutual Fund Sec. Litig.*,
    2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006) ............................................................14

*In re PXRE Group, Ltd. Sec. Litig.*,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009), *aff'd sub nom.*
    *Condra v. PXRE Group, Ltd.*, 357 Fed. App'x 393 (2d Cir. 2009) .................................12, 13

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*,
    32 F.3d 697 (2d Cir. 1994) ...........................................................................................3 n.3

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ...............................................................................................13

*Kalnit v. Eichler*,
    85 F. Supp. 2d 232 (S.D.N.Y. 1999) ..................................................................................12

*Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.*,
    652 F. Supp. 2d 576 (E.D. Pa. 2009) ..................................................................................12

*Malin v. XL Capital Ltd.*,
    499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*,
    312 Fed. App'x 400 (2d Cir. 2009) ...............................................................................14, 17

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
    547 U.S. 71 (2006) .............................................................................................................11

*Pollio v. MF Global, Ltd.*,
    608 F. Supp. 2d 564 (S.D.N.Y. 2009) ...........................................................................11, 14

*Seibert v. Sperry Rand Corp.*,
    586 F.2d 949 (2d Cir. 1978) ...............................................................................................10

*Stavros v. Exelon Corp.*,
    266 F. Supp. 2d 833 (N.D. Ill. 2003) ..................................................................................16

## STATUTES, RULES & REGULATIONS

Securities Exchange Act § 10(b), 15 U.S.C. § 78j(b) ........................................................ 3 & n.3

Securities Exchange Act § 20(a), 15 U.S.C. § 78t(a) ...............................................................3 n.3

Securities Exchange Act § 20A, 15 U.S.C. § 78t-1 ..................................................................3 n.3

Securities Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5 ............................................. 3 & n.3

Private Securities Litigation Reform Act of 1995 .................................................................. *passim*

Fed R. Civ. P. 9(b) ................................................................................................................... *passim*

Fed. R. Civ. P. 11 ..................................................................................................9 n.9

Fed. R. Civ. P. 12(b)(6) .......................................................................................1, 17

**OTHER AUTHORITIES**

*Girard Gibbs LLP Announces Class Action Lawsuit Filed Against Wachovia Corporation*,
    BUSINESS WIRE, Mar. 19, 2008 ........................................................................ 10

**TABLE OF SOURCES**

| ABBREVIATION | DESCRIPTION | EXHIBIT(S) |
|---|---|---|
| **Declarations and Briefs** | | |
| 2009 Hirsch Decl. | Declaration of Eric A. Hirsch in Support of Wachovia Defendants' Motion to Dismiss the Amended Class Action Complaint, filed in *In re Wachovia Equity Securities Litigation,* No. 08-CV-6171 (the "Equity Action"), on March 19, 2009 | N/A |
| Orig. Eq. Opp. | Lead Plaintiff's Memorandum of Law in Opposition to the Wachovia Defendants' Motion to Dismiss the Amended Class Action Complaint, filed in the Equity Action on June 2, 2009 | N/A |
| McNeela Decl. | Declaration of Andrew M. McNeela in Opposition to the Wachovia Defendants' Motion to Dismiss the Amended Class Action Complaint, filed in the Equity Action on June 2, 2009 | N/A |
| 2009 Jean Decl. | Declaration of Courtney A. Jean in Support of the Wachovia Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint, filed in *In re Wachovia Preferred Securities and Bond/Notes Litigation*, Master File No. 09-CV-6351 (the "Bond Notes Action"), on November 3, 2009 | N/A |
| Braunstein Decl. | Declaration of Rachel L. Braunstein in Support of Defendants' Motion to Dismiss the Complaint, filed in *FC Holdings AB, et al. v. Wells Fargo & Co., et al.*, No. 09-CV-5466, on November 3, 2009 | N/A |
| Jean Reply Decl. | Reply Declaration of Courtney A. Jean in Further Support of the Wachovia Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint, filed in the Bond Notes Action on February 4, 2010 | N/A |
| Class Action Brief | Memorandum of Law in Support of the Wachovia Defendants' Motions to Dismiss the Amended Consolidated Class Action Complaints, filed in the Equity Action and Bond Notes Action on July 14, 2010 | N/A |

| | | |
|---|---|---|
| 2010 Hirsch Decl. | Declaration of Eric A. Hirsch in Support of the Wachovia Defendants' Motions to Dismiss the Amended Consolidated Class Action Complaints, filed in the Equity Action and Bond Notes Action on July 14, 2010 | N/A |
| 2010 Jean Decl. | Declaration of Courtney A. Jean in Support of Defendants' Motion to Dismiss the Amended Complaint, filed in *FC Holdings AB, et al. v. Wells Fargo & Co., et al.*, No. 09-CV-5466, on July 14, 2010 | N/A |
| **Wachovia Exchange Act Filings** | | |
| 1/31/06 8-K | Wachovia Corp. Press Release filed with the SEC on Form 8-K on January 31, 2006 | 2009 Hirsch Decl. Ex. 2 |
| 5/8/06 8-K | Wachovia Corp. Press Release dated May 7, 2006 and Merger Presentation materials dated May 8, 2006, filed with the SEC on Form 8-K on May 8, 2006 | 2009 Jean Decl. Ex. 3 |
| 8/4/06 10-Q | Wachovia Corp. Quarterly Report on Form 10-Q for the quarter ending June 30, 2006, filed with the SEC on August 4, 2006 | 2009 Hirsch Decl. Ex. 4 |
| 11/3/06 10-Q | Wachovia Corp. Quarterly Report on Form 10-Q for the quarter ending September 30, 2006, filed with the SEC on November 3, 2006 | 2009 Hirsch Decl. Ex. 5 |
| 2006 10-K | Wachovia Corp. Annual Report on Form 10-K for the year ending December 31, 2006, filed with the SEC on February 28, 2007 | 2009 Hirsch Decl. Ex. 6 |
| 4/16/07 8-K | Wachovia Corp. First Quarter 2007 Quarterly Earnings Report dated April 16, 2007, filed with the SEC on Form 8-K on April 16, 2007 | 2010 Jean Decl. Ex. 4 |
| 7/30/07 10-Q | Wachovia Corp. Quarterly Report on Form 10-Q for the quarter ending June 30, 2007, filed with the SEC on July 30, 2007 | 2009 Hirsch Decl. Ex. 8 (Ex. 19 at 20, 46) & Jean Reply Decl. Ex. 2 (Ex. 19 at 2, 5, 16) |

| | | |
|---|---|---|
| 11/9/07 10-Q | Wachovia Corp. Quarterly Report on Form 10-Q for the quarter ending September 30, 2007, filed with the SEC on November 9, 2007 | 2009 Hirsch Decl. Ex. 9 (Ex. 19 at 54) <br><br> & <br><br> Jean Reply Decl. Ex. 3 (Ex. 19 at 5) |
| 2007 10-K | Wachovia Corp. Annual Report on Form 10-K for the year ending December 31, 2007, filed with the SEC on February 28, 2008 | Braunstein Decl. Ex. 4 (Items 1A, 5; Ann. Rpt at Overview, 4, 14,-16, 30, 50, 54, 69-71, 97; Ex. 21 at 1, 30) <br><br> & <br><br> 2010 Jean Decl. Ex. 5 (Ann. Rpt. at 38, 40) |
| 3/10/08 Form 14A | Wachovia Corp. Definitive Proxy Statement for 2008, filed with the SEC on Form 14A on March 10, 2008 | 2009 Jean Decl. Ex. 4 |
| 4/14/08 8-K | Wachovia Corp. 1Q08 Financial Highlights dated April 14, 2008, filed with the SEC on Form 8-K on April 14, 2008 | 2010 Jean Decl. Ex. 6 |
| 5/12/08 10-Q | Wachovia Corp. Quarterly Report on Form 10-Q for the quarter ending March 31, 2008, filed with the SEC on May 12, 2008 | Braunstein Decl. Ex. 5 |
| 7/22/08 8-K | Wachovia Corp. 2Q08 Financial Highlights dated July 22, 2008, filed with the SEC on Form 8-K on July 22, 2008 | 2010 Jean Decl. Ex. 7 |
| 8/11/08 10-Q | Wachovia Corp. Quarterly Report on Form 10-Q for the quarter ending June 30, 2008, filed with the SEC on August 11, 2008 | Braunstein Decl. Ex. 6 |
| 10/30/08 10-Q | Wachovia Corp. Quarterly Report on Form 10-Q for the quarter ending September 30, 2008, filed with the SEC on October 30, 2008 | Braunstein Decl. Ex. 7 |

| Conference Call Transcripts & Investor Presentations | | |
|---|---|---|
| 5/12/06 Conf. Call | Transcript of Wachovia Corp. Conference Call on Golden West Merger, May 12, 2006 | 2009 Hirsch Decl. Ex. 17 |
| 5/16/06 Conf. Call | Transcript of UBS Financial Services Conference, May 16, 2006 | 2009 Hirsch Decl. Ex. 18 |
| 4/16/07 Conf. Call | Transcript of Wachovia Corp. First Quarter 2007 Earning Conference Call, April 16, 2007 | 2009 Hirsch Decl. Ex. 19 |
| 7/20/07 Conf. Call | Transcript of Wachovia Corp. Second Quarter 2007 Earnings Conference Call, July 20, 2007 | 2009 Hirsch Decl. Ex. 20 |
| 9/10/07 Conf. Call | Transcript of Wachovia Corp. at Lehman Brothers 5th Annual Financial Services Conference, September 10, 2007 | 2009 Hirsch Decl. Ex. 21 |
| 10/19/07 Conf. Call | Transcript of Wachovia Corp. Third Quarter Earnings Conference Call, October 19, 2007 | 2009 Hirsch Decl. Ex. 22 |
| 11/9/07 Conf. Call | Transcript of Wachovia Corp. at BancAnalysts Association of Boston Conference, November 9, 2007 | 2009 Hirsch Decl. Ex. 23 |
| 11/14/07 Conf. Call | Transcript of Wachovia Corp. at Merrill Lynch Banking and Financial Services Investor Conference, November 14, 2007 | 2009 Hirsch Decl. Ex. 24 |
| 1/22/08 Conf. Call | Transcript of Wachovia Corp. Forth Quarter 2007 Earnings Conference Call, January 22, 2008 | 2009 Hirsch Decl. Ex. 25 |
| 1/30/08 Conf. Call | Transcript of Wachovia Corp. at Citigroup Financial Services Conference, January 30, 2008 | 2009 Hirsch Decl. Ex. 26 |
| 2/13/08 Conf. Call | Transcript of Wachovia Corp. Fixed Income Update, February 13, 2008 | 2009 Hirsch Decl. Ex. 27 |
| 3/12/08 Conf. Call | Transcript of Wachovia Corp., Deutsche Bank Conference Call, March 12, 2008 | 2009 Hirsch Decl. Ex. 28 |
| 4/14/08 Conf. Call | Transcript of Wachovia Corp. First Quarter 2008 Earnings Conference Call, April 14, 2008 | 2009 Hirsch Decl. Ex. 29 |
| 7/22/08 Conf. Call | Transcript of Wachovia Corp. Second Quarter Earnings Conference Call, July 22, 2008 | 2009 Hirsch Decl. Ex. 30 |

| 6/12/07 Investor Presentation | Wachovia Corp. Mortgage Update Presentation, June 12, 2007 | 2009 Hirsch Decl. Ex. 31 |
|---|---|---|
| **Forms 4 and 5** | | |
| Thompson Forms 4 | G. Kennedy Thompson Forms 4 and Form 5 | 2009 Hirsch Decl. Ex. 33 |
| Truslow Forms 4 | Donald K. Truslow Forms 4 and Form 5 | 2009 Hirsch Decl. Ex. 34 |
| Wurtz Forms 4 | Thomas J. Wurtz Forms 4 | 2009 Hirsch Decl. Ex. 35 |
| **SEC Filings For Other Entities** | | |
| Golden West 2005 10-K | Golden West Annual Report on Form 10-K for the year ending December 31, 2005, filed with the SEC on March 8, 2006 | 2009 Hirsch Decl. Ex. 44 |
| Golden West 7/25/06 14A | Golden West Financial Corp. Proxy Statement dated July 24, 2006, filed with the SEC on Form 14A on July 25, 2006 | 2009 Hirsch Decl. Ex. 45 |
| Barclays Bank PLC 2007 20-F | Barclays Bank PLC Annual Report on Form 20-F for the year ending December 31, 2007, filed with the SEC on March 26, 2007 | 2009 Hirsch Decl. Ex. 46 |
| **Other Sources** | | |
| N/A | FRANK J. FABOZZI, THE HANDBOOK OF MORTGAGE-BACKED SECURITIES (6th ed. 2006) | 2010 Jean Decl. Ex. 9 |
| N/A | Longshore CDO Funding 2006-2 Offering Memorandum, August 3, 2006 | 2009 Hirsch Decl. Ex. 48 |
| N/A | Robert Stowe England, *The Big Scramble,* MORTGAGE BANKING, December 2007 | 2009 Jean Decl. Ex. 7 |
| N/A | Alan Greenspan, *The Roots of the Mortgage Crisis*, THE WALL STREET JOURNAL, December 12, 2007 | 2009 Hirsch Decl. Ex. 41 |
| N/A | LAURIE S. GOODMAN, *et al.*, SUBPRIME MORTGAGE CREDIT DERIVATIVES (Frank J. Fabozzi, ed., 2008) | 2009 Hirsch Decl. Ex.37 |

| N/A | Erik Holm & Jesse Westbrook, *N.Y. Regulator Pushes Banks to Rescue Bond Insurers*, BLOOMBERG, January 24, 2008 | 2009 Jean Decl. Ex. 8 |
|---|---|---|
| N/A | *Girard Gibbs LLP Announces Class Action Lawsuit Filed Against Wachovia Corporation*, BUSINESS WIRE, March 19, 2008 | Braunstein Decl. Ex. 10 |
| N/A | *Wachovia Adjusts Mortgage Underwriting Guidelines*, SACRAMENTO BUSINESS JOURNAL, April 11, 2008 | 2010 Jean Decl. Ex. 10 |
| N/A | *Don't mark to Market*, THE ECONOMIST, March 6, 2008 | 2009 Hirsch Decl. Ex. 38 |
| N/A | Ben Logan, *The ABX Index: A Pricing Conundrum*, CREDIT, May 1, 2008 | 2009 Hirsch Decl. Ex. 36 |
| N/A | Carl Dincesen, *Ambac, MBIA: The Rating Shoes Drop*, SEEKING ALPHA, June 24, 2008 | 2009 Jean Decl. Ex. 9 |
| N/A | James R. Hagerty, *et al.*, *U.S. Seizes Mortgage Giants – Government Ousts CEOs of Fannie, Freddie; Promises Up to $200 Billion in Capital*, THE WALL STREET JOURNAL, September 8, 2008 | Jean Reply Decl. Ex. 10 |
| N/A | Matthew Karnitschnig, *et al.*, *U.S. to Take over AIG in $85 Billion Bailout; Central Banks Inject Cash as Credit Dries Up*, THE WALL STREET JOURNAL, September 17, 2008 | Jean Reply Decl. Ex. 12 |
| N/A | Deborah Solomon, *et al.*, *Shock Forced Paulson's Hand*, THE WALL STREET JOURNAL, September 20, 2008 | Jean Reply Decl. Ex. 13 |
| N/A | Op-Ed, *The End of Wall Street*, THE WALL STREET JOURNAL, September 23, 2008 | Jean Reply Decl. Ex. 14 |
| N/A | Greg Hitt & Deborah Solomon, *Historic Bailout Passes As Economy Slips Further*, THE WALL STREET JOURNAL, October 4, 2008 | Jean Reply Decl. Ex. 15 |
| N/A | *The Financial Crisis and Role of Federal Regulators: Hearing Before the House Committee on Oversight and Government Reform*, 110th Cong. (2008) | 2009 Hirsch Decl. Ex. 42 |
| N/A | Susanne Craig, *et al.*, The Weekend That Wall Street Died, THE WALL STREET JOURNAL, December 29, 2008 | Jean Reply Decl. Ex. 16 |

| N/A | *S&P 500 Financial Sector Market Cap Continues to Sink*, SEEKING ALPHA, January 14, 2009 | 2009 Hirsch Decl. Ex. 43 |
|---|---|---|
| N/A | James B. Steward, *A Year Later, How Safe is Safe?*, THE WALL STREET JOURNAL, September 16, 2009 | Jean Reply Decl. Ex. 17 |
| N/A | ROGER LOWENSTEIN, THE END OF WALL STREET (2010) | 2010 Jean Decl. Ex. 11 |
| N/A | MICHAEL LEWIS, THE BIG SHORT (2010) | 2010 Jean Decl. Ex. 12 |

Defendants respectfully submit this Memorandum of Law in support of their motion to dismiss the first amended complaint ("FCFAC") for failure to state a claim under Rule 12(b)(6), and failure to meet the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## PRELIMINARY STATEMENT

Even after amendment, this "opt out" action adds nothing to, and must be dismissed along with, the class action complaint (the "Equity Complaint") in *In re Wachovia Equity Securities Litigation*, No. 08-CV-6171 (the "Equity Action"). The FC Plaintiffs and/or their assignors allegedly purchased Wachovia stock on various dates during a portion of that same time period, between July 2007 and August 2008. Although the FC Plaintiffs have the right to pursue individual actions, the FCFAC is substantively indistinguishable from the Equity Complaint and should be dismissed for the same reasons. Like the Equity Action, this is nothing more than a fraud-by-hindsight case claiming that the setbacks experienced by Wachovia as a result of the global market meltdown — an unprecedented catastrophe never even mentioned in the FCFAC — amount to fraud.

All of the defendants herein are also defendants in the Equity Action, their brief in support of their motion to dismiss the latest amended complaint in the Equity Action (the "Class Action Brief") is incorporated by reference herein, and the FCFAC should be dismissed for the reasons stated therein. Rather than repeat those arguments, this brief will focus on the superficial distinctions between the FCFAC and the Equity Complaint and explain why these distinctions make no difference to the viability of the claims and why, in certain instances, they actually provide an additional basis for dismissal. Those differences — most of which remain unchanged from FC Plaintiffs' original complaint — are:

*First,* while the FC Plaintiffs have cited four additional allegedly misleading statements, these add nothing — they are derived from sources (*e.g.*, earnings calls and conference transcripts) already cited in the Equity Complaint and cover no new subject areas.

*Second,* now that they have belatedly disclosed the timing and other details of their purchases and sales of Wachovia stock, it is clear that each of the various FC Plaintiffs is unable to allege reliance, causation, and/or damages with respect to certain of their purchases and certain of the alleged misstatements.

*Third,* the only substantive way in which the FCFAC varies from the Equity Complaint is that it alleges that defendants violated the federal securities laws by failing to timely disclose Wachovia's potential exposure to third parties who had purchased auction rate securities ("ARS") from Wachovia.  This claim fails for two reasons:  (1) the allegedly omitted information was in fact publicly disclosed, and (2) there are no allegations whatsoever that any ARS-related statements or alleged omissions were made with scienter.

It is these three issues that this Memorandum will address.

## THE PARTIES[1]

Defendant Wachovia (the "Company") was acquired by Wells Fargo & Company effective December 31, 2008.  At all relevant times, Wachovia operated as a financial and bank holding company incorporated in North Carolina.  ¶ 23.

The Individual Defendants are Messrs. Thompson, Wurtz, and Truslow (each a defendant

---

1   Further Factual Background is set forth in the Class Action Brief and is incorporated by reference herein.  Unless specified, all documents referenced herein are attached to the declarations identified in the Table of Sources, and emphasis is added and internal citations are omitted.  *See also* Class Action Br. at 5 n.3 (concerning the Court's ability to take judicial notice of, *inter alia*, SEC filings and documents referenced in the Complaint). Paragraph ("¶") citations throughout this Memorandum refer to the FCFAC.

in the Equity Action), who held various senior posts until various dates in 2008.  ¶¶ 25-27.

Plaintiff FC Holdings AB states that it is the assignee of various non-parties who purchased Wachovia stock, namely Discret Partners LLP; Lavanda Partners LLP; Lilas Partners LLP; Malva Partners LLP; FGIC; Ana Lopez; Francisco Lopez; Alejandro Mendoza; Juan Mendoza; Julio Pacheco; Morella Pacheco; Jose Pietri; and Oscar Pietri (collectively, the "assignors").  ¶¶ 20, 22.  FC Holdings AB apparently made no such purchases itself.  The remaining plaintiffs sue in their individual capacities based on their own alleged purchases of Wachovia stock: Foxito PTE LTD; Pikapu PTE LTD; Chupita PTE LTD; Juansilu Investments PTE LTD; and Fintrade Limited.[2]

## ARGUMENT

## I.     THE SECTION 10(B) AND RULE 10B-5 CLAIMS FAIL FOR THE REASONS STATED IN THE CLASS ACTION BRIEF

As noted above, another brief being filed today sets forth why the Equity Complaint fails to allege falsity and scienter under the federal securities laws, and we incorporate those arguments by reference rather than restate them here.[3]  But the key flaw of both the FCFAC and the Equity Complaint is the same:  the inability to plead anything more than that Wachovia's stock price declined, causing the value of plaintiffs' investments therein to decline along with it.[4]

---

2    *See* FCFAC at 1.  The individual plaintiffs, along with the FC Holdings AB and the "assignors" are collectively referred to herein as "FC Plaintiffs."

3    FC Plaintiffs' Section 20(a) control person claim and Section 20A claim (for insider trading) each require that they successfully plead an independent violation of the Exchange Act.  FC Plaintiffs' failure to state a claim under Section 10(b) and Rule 10b-5 dooms their Sections 20(a) and 20A claims.  *See Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 704 (2d Cir. 1994) (holding that a Section 20A claim "must plead as a predicate an independent violation of the '34 Act"); *ECA v. J.P. Morgan Chase, Co.*, 553 F.3d 187, 207 (2d Cir. 2009).

4    Attached to the 2010 Jean Decl. at Ex. 1 is a chart cross-referencing the citations (by paragraph number) to the various sources alleged to contain false statements in the FCFAC

In particular, for the reasons stated in the Class Action Brief, (i) there is no materially false statement alleged, (ii) the requisite "strong inference" of scienter is not established because, among other things, the stock sales by certain defendants (who in fact significantly increased their holdings over the relevant period) were neither unusual nor suspicious as required under the controlling case law,[5] and (iii) FC Plaintiffs have failed to allege loss causation.

## II. FOUR ADDITIONAL ALLEGED MISSTATEMENTS FROM SOURCES CITED IN THE EQUITY COMPLAINT DO NOT SAVE THE FC PLAINTIFFS' CLAIMS

The Complaint claims that four statements not explicitly quoted in the Equity Complaint, but <u>taken from sources already cited</u> in that complaint (statements from a September 10, 2007 presentation at a Lehman Brothers Conference (¶ 108), a November 9, 2007 BancAnalysts Association of Boston Conference (¶ 127), and July 20, 2007 and January 22, 2008 conference calls (¶¶ 115, 152)) were false and misleading. But the substance of those statements — generally, that Golden West and/or Wachovia was "comfortable" with its loan loss allowance (¶ 115), had "disciplined" underwriting practices (¶ 127), employed appraisers who were "charged with giving the right value for houses" (¶ 108), and maintained a "very disciplined approach to modeling [its] liquidity needs" (¶ 152) — is entirely duplicative of the substance of many of the alleged misstatements made in the same sources cited in the Equity Complaint, and the statements are not adequately pled to be false, and/or are too vague to be actionable, for the

---

with those in the Equity Complaint.

5    Indeed, the scienter case here is even weaker than that which is insufficient in the Equity Action. FC Plaintiffs have merely copied the "confidential witness" allegations of the Equity Complaint wholesale without conducting any independent investigation of those facts, which allegations are, in any event, wholly deficient. FC Plaintiffs' tactic of copying — without investigating — claims based on confidential witnesses from other complaints is entirely inappropriate, and these allegations (¶¶ 37-38) should be stricken from the FCFAC. *See* Class Action Br. at 26 n.33.

same reasons being briefed in that case.  *See* Class Action Br. at Part II.I.[6]

**III.    THE FC PLAINTIFFS' BELATEDLY-DISCLOSED TRADING DETAILS REVEAL AN INABILITY TO PLEAD RELIANCE, CAUSATION, AND/OR DAMAGES WITH RESPECT TO MANY OF THEIR PURCHASES**

**REDACTED PURSUANT TO COURT ORDER (ENDORSED LETTER) DATED MAY 13, 2010.**

---

[6]    *See* 2010 Jean Decl. Ex. 2 (chart identifying statements cited in the Equity Complaint that are substantively similar to the four new alleged misstatements).

**REDACTED PURSUANT TO COURT ORDER (ENDORSED LETTER) DATED MAY 13, 2010.**

REDACTED PURSUANT TO COURT ORDER (ENDORSED LETTER) DATED MAY 13, 2010.

**REDACTED PURSUANT TO COURT ORDER (ENDORSED LETTER) DATED MAY 13, 2010.**

**IV.    FC PLAINTIFFS' AUCTION RATE SECURITIES CLAIMS FAIL**

In their only attempt at a substantive addition to the claims made in the Equity Complaint, the FC Plaintiffs tack on a disclosure claim related to Wachovia's potential exposure flowing from its sale of auction rate securities.[7]  This claim suffers from several fatal infirmities, each of which is addressed below (and was fully explained in defendants' initial motion to dismiss the original FC complaint).

- First, the FC Plaintiffs ignore that Wachovia's potential ARS exposure was made public months earlier than plaintiffs claim, on March 19, 2008, when a purported class action lawsuit (the "*Waldman* Class Action") concerning ARS sold by Wachovia was filed and publicly announced in the press.

- Moreover, as with the FC Plaintiffs' claims relating to the alleged misstatements and omissions that are also contained in the Equity Complaint, they fail to adequately plead scienter or falsity with regard to alleged omissions concerning Wachovia's potential ARS exposure.

---

[7]    As alleged in the FCFAC, ARS are securities purchased at periodic auctions by customers who bid the lowest interest rate or dividend they are willing to accept for the instruments. The auction clears at the lowest bid rate sufficient to cover all of the securities for sale, and that rate applies to all of the securities at the auction until the next auction.  ¶¶ 224-25.

- The FC Plaintiffs' alleged GAAP violations relating to Wachovia's ARS transactions must be dismissed because they lack any particularized facts suggesting that any ARS-related write-downs should have been taken earlier than they were.

As an initial matter, it is important to focus on what the FC Plaintiffs attempt to obscure through their blatant attempt to ride the coattails of actions involving purchasers of ARS securities:  The FC Plaintiffs do not allege that they purchased any ARS from Wachovia at any time.[8]  Because the FC Plaintiffs are not purchasers of ARS, questions of what Wachovia did and did not disclose to such purchasers are irrelevant here.  Instead, the FC Plaintiffs claim only that Wachovia's <u>public statements</u> were false and misleading because Wachovia failed to disclose its potential exposure to third parties based on its alleged conduct regarding the ARS business. ¶¶ 239-42.

A.     <u>Wachovia's Potential ARS Exposure Was Publicly Disclosed</u>

FC Plaintiffs allege that Wachovia's "massive exposure to ARS-based liability" was not disclosed until August 11, 2008, the date on which it filed its June 30, 2008 Form 10-Q.  ¶ 244. They are wrong.  In fact, Wachovia's potential ARS exposure was publicly disclosed by March 19, 2008 when, as the Complaint concedes, a putative class action was filed on behalf of "thousands" of purchasers of ARS sold by Wachovia, alleging that Wachovia made certain misstatements and omissions regarding auction rate securities that it offered between March 19, 2003 and February 13, 2008.  *See* ¶ 243; *see also* Braunstein Decl. Ex. 8 (complaint in *Waldman, et al. v. Wachovia Corp., et al.*, No. 08-CV-02913).  The filing of the *Waldman* Class Action was

---

8    FC Plaintiffs' ARS allegations are largely cut-and-pasted from the complaint in *Securities and Exchange Commission v. Wachovia Securities, LLC*, No. 09-CV-743 (N.D. Ill.), dated February 5, 2009 (Braunstein Decl. Ex. 9).  *See In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) (striking allegations under Rule 11(b) taken from SEC complaint where plaintiffs did not conduct any personal factual investigation or put forth another basis for the allegations).

disseminated in the press on that date.  *See Girard Gibbs LLP Announces Class Action Lawsuit Filed Against Wachovia Corporation*, BUSINESS WIRE, Mar. 19, 2008.  Thus, the FC Plaintiffs — and the investing public generally — were on notice of Wachovia's potential ARS exposure as of the date the *Waldman* Class Action was filed.  "Where allegedly undisclosed material information is in fact readily accessible in the public domain ... a defendant may not be held liable for failing to disclose this information."  *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003); *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978) ("there is no duty to disclose information to one who reasonably should be aware of it").

Moreover, Wachovia itself disclosed its potential liability relating to ARS on <u>May 12, 2008</u> when it filed its first quarter 2008 Form 10-Q — not on August 11, 2008, as FC Plaintiffs erroneously allege.  *See* 5/12/08 10-Q at Part II, Item 1; *see also* ¶ 244.  In its May 12, 2008 Form 10-Q, Wachovia made the following full disclosure:

> Wachovia and Wachovia Securities, LLC have been named in a civil suit captioned *Judy M. Waldman Trustee v. Wachovia Corporation and Wachovia Securities LLC* filed March 19, 2008 in the United States District Court for the Southern District of New York.  The suit seeks class action status for customers who purchased and continue to hold auction rate securities based upon alleged misrepresentations made with respect to the quality, risk and characteristics of auction rate securities.

Thus, at the most, only five weeks elapsed — and not six months, as FC Plaintiffs misleadingly allege — between mid-February 2008, when Wachovia ended its par daily liquidity service and its participation in ARS auctions (¶¶ 239-40), and March 19, 2008, when its potential ARS exposure was first publicly disclosed.[9]  FC Plaintiffs' decision to keep their ARS allegations in

---

9   To be clear, the defendants do not concede that the FC Plaintiffs have stated a claim based on this five-week period, since, as is explained *infra*, (i) the FC Plaintiffs have failed to set forth any colorable allegation of scienter with respect to their ARS claims <u>for any period</u>, including the five weeks between mid-February 2008 and March 19, 2008; and (ii) there are no allegations in the FCFAC that suggest that Wachovia had calculated its ARS-related exposure or had reason to know what that exposure was at any point in time before it

the FCFAC speaks volumes about their care in pleading since this exact deficiency was pointed

out to them in defendants' motion to dismiss the original complaint.

      B.      <u>FC Plaintiffs Do Not Allege Scienter</u>

Even with regard to that short five-week period of time between the end of Wachovia's

participation in the ARS markets in mid-February and the March 19, 2008 disclosure of

Wachovia's potential ARS exposure, however, FC Plaintiffs allege absolutely no facts — as they

must under Rule 9(b) and the PSLRA — to support an inference that defendants were aware of

the magnitude of Wachovia's potential exposure to ARS.  The PSLRA "insists that securities

fraud complaints 'specify' each misleading statement; that they set forth the facts 'on which [a]

belief' that a statement is misleading was 'formed'; and that they 'state with particularity facts

giving rise to a strong inference that the defendant acted with the required state of mind.'"

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006) (quoting *Dura*,

544 U.S. at 345); *see also* 15 U.S.C. § 78u-4(b)(1)-(2) (2010).  In the absence of sufficiently

particularized allegations of scienter, a complaint must be dismissed.  *See Pollio v. MF Global,*

*Ltd.*, 608 F. Supp. 2d 564, 569-70 (S.D.N.Y. 2009) (allegations in a single paragraph "that

defendants knew, but failed to disclose" that defendant-corporation's business was "weaker than

represented" were insufficient to show scienter under PSLRA and Rule 9(b)).

*No Allegations of Motive and Opportunity.*  Here, the FC Plaintiffs have not made any

attempt to allege that the defendants had a motive to commit fraud with respect to their ARS

allegations.  *See ECA*, 553 F.3d at 198 (plaintiffs may demonstrate scienter by pleading

particularized facts showing "either (1) that defendants had the motive and opportunity to

commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness").

---

announced an increase in its reserves on August 11, 2008.

As this Court has recognized, "to plead motive a securities plaintiff must plead a 'concrete and personal' benefit to be realized from the allegedly improper behavior." *In re PXRE Group, Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 533 (S.D.N.Y. 2009), *aff'd sub nom. Condra v. PXRE Group, Ltd.*, 357 Fed. App'x 393 (2d Cir. 2009). Nowhere do FC Plaintiffs allege that defendants benefited, much less what they gained, by delaying the disclosure of Wachovia's potential ARS exposure for a matter of weeks or even months. *See Kalnit v. Eichler*, 85 F. Supp. 2d 232, 243 (S.D.N.Y. 1999) (rejecting claims where the complaint was "utterly silent on the question of motive" and there was "no indication that defendants profited from their alleged material omissions").

   ***No "Circumstantial Evidence" of Recklessness Alleged.*** Tellingly, the Complaint does not include a single mention of any of the Individual Defendants in connection with the ARS allegations, and nothing suggests that any of them knew of any material undisclosed facts concerning Wachovia's potential ARS exposure. *See PXRE Group*, 600 F. Supp. 2d at 536 ("to establish scienter in misrepresentation cases, facts must be alleged which particularize how and why <u>each defendant</u> actually knew, or was reckless in not knowing, that the statements were false at the time made") (quoting *Coronel v. Quanta Capital Holdings, Ltd.*, 2009 WL 174656, at *27 (S.D.N.Y. Jan. 26, 2009)); *see also Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.*, 652 F. Supp. 2d 576, 594-95 (E.D. Pa. 2009) (dismissing securities fraud claim where plaintiffs failed to allege scienter with particularity against each defendant).

   Instead, FC Plaintiffs base their scienter claim on conclusory allegations that unspecified "Wachovia senior managers" "knew" or "learned" of problems in the ARS market. ¶¶ 229, 236, 238. Settled case law of course confirms that empty allegations that defendants "knew" or "were aware" of adverse facts do not demonstrate the requisite "circumstantial evidence" of conscious

misbehavior or recklessness to create a compelling inference of scienter, particularly where, as here, FC Plaintiffs fail to allege any motive for the supposedly fraudulent scheme.  *See ECA*, 553 F.3d at 198-99 ("'the strength of the circumstantial allegations must be correspondingly greater' if there is no motive"); *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (same); *PXRE Group*, 600 F. Supp. 2d at 536, 538 (rejecting scienter allegations that defendants "knew facts, or had access to," chief actuary's concerns about the sufficiency of the [c]ompany's loss reserves "due to their positions in" the company).  The Complaint contains no allegations identifying who at Wachovia "learned" or "knew" of anything related to the ARS market.  Nor does it cite a single documentary source or witness (confidential or otherwise) that would suggest that the defendants knowingly or recklessly made any of the alleged omissions relating to Wachovia's potential ARS exposure.

Further, FC Plaintiffs' allegations concerning what A.G. Edwards (Wachovia's wholly-owned subsidiary)[10] or A.G. Edwards' "ARS trader" or "fixed income department" "knew" or "learned" regarding ARS (*see* ¶¶ 232, 234-35) suffer from an additional defect.  Wachovia and A.G. Edwards are entirely separate entities.  Thus, even if FC Plaintiffs did present anything more than conclusory allegations about what A.G. Edwards or its employees knew — and they do not — that knowledge cannot be imputed to Wachovia or the Individual Defendants.  *See In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 342-43 (W.D.N.Y. 2008) (finding no scienter where plaintiffs did not "proffer concrete evidence" that anyone at the parent company was aware of problems at the subsidiary); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 160 (D. Conn. 2007) (holding that a subsidiary's knowledge of information relevant to the parent's loss reserve levels "cannot form the basis of the Individual Defendants' knowledge" where "there is

_____

10  *See* 2007 10-K, Ex. 21 at 1, 30 (identifying A.G. Edwards & Sons, Inc. as one of the Company's subsidiaries).

no showing that they [at the parent] were aware of it"), *aff'd*, 312 Fed. App'x 400 (2d Cir. 2009).

Finally, FC Plaintiffs allege no facts suggesting that the actual amount of Wachovia's potential ARS exposure was known by anyone at Wachovia before it was first disclosed in August 2008.  *See In re Centerline Holdings Co. Sec. Litig.*, 613 F. Supp. 2d 394, 401 (S.D.N.Y. 2009) (holding that scienter was not established where plaintiff did "not allege any facts to show that defendants knew they should have disclosed information of the transactions prior to the date of the announcement, but recklessly failed to do so").  Indeed, the absence of any such factual allegations, along with the public disclosure of Wachovia's potential ARS exposure in March 2008 — mere weeks after Wachovia stopped participating in the ARS market — undermines any finding that defendants were reckless in failing to disclose this information earlier.  *See In re Morgan Stanley & Van Kampen Mutual Fund Sec. Litig.*, 2006 WL 1008138, at *11 (S.D.N.Y. Apr. 18, 2006) ("[g]iven the defendants' compliance with the law [regarding what information must be disclosed and when], defendants could not possess the required intent or recklessness").

Accordingly, for all of the reasons stated above, in the absence of any factual allegations supporting an inference of scienter, the FC Plaintiffs' ARS allegations must be dismissed on this independently sufficient basis.  *See Pollio*, 608 F. Supp. 2d at 569-70, 572.

C.  FC Plaintiffs Do Not Allege Falsity

FC Plaintiffs also fail to plead with particularity any factual allegations suggesting that Wachovia made any false or misleading statements or omissions regarding ARS.  First, the FC Plaintiffs do not allege that defendants made any affirmative misstatements regarding ARS. Second, the Complaint contains no allegations of facts that were known to Wachovia (for example, that it had calculated its potential ARS exposure in February 2008 but failed to disclose

it at that time), rendering its public statements misleading.[11]  Thus, in the absence of sufficient allegations of falsity, FC Plaintiffs' claims must be dismissed.  *See Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398, 411 (S.D.N.Y. 2007) (rejecting claim that disclosure contained misleading omission where "Plaintiffs [did] not plead with particularity that any Individual Defendant was aware," before the relevant disclosure, that a dispute with another company would lead to arbitration); *In re Aegon N.V. Sec. Litig.*, 2004 WL 1415973, at *8 (S.D.N.Y. June 23, 2004) (explaining that a complaint does not plead why a statement is misleading where it lacks sufficient allegations of "to whom and when [undisclosed facts] became known").[12]

        D.      <u>FC Plaintiffs' GAAP Allegations Relating to ARS Fail</u>

FC Plaintiffs further allege that Wachovia's accounting treatment of its ARS transactions violated GAAP because, in the FC Plaintiffs' view, the Company should have written down the value of "illiquid ARS held in its balance sheet" (¶ 287) in 2007 and not in the second and third quarters of 2008 (¶¶ 289-92).  This claim fails for multiple reasons.

First, this allegation is insufficiently particularized under Rule 9(b) to state a claim. Nowhere do FC Plaintiffs allege the amount of ARS securities Wachovia held on its balance sheet at any time in 2007 or 2008.  The ARS-related charges taken by Wachovia in the second quarter of 2008 were increases in legal reserves related to "recent and active settlement

---

11  The FC Plaintiffs also fail to explain how Mr. Thompson could have continued to "prop up" the ARS market until Wachovia's August 2008 disclosure, when he left the bank months earlier, on June 2, 2008.  *See* ¶ 25.

12  The FC Plaintiffs suggest that Wachovia should have known it had ARS-related exposure by littering the Complaint with allegations concerning the role of banks in the ARS market. *See, e.g.*, ¶ 236.  However, given publicly available information about how the ARS market functioned, such allegations do not give rise to a claim of fraud.  *See In re Citigroup Auction Rate Sec. Litig.*, 2009 WL 2914370, at *7 (S.D.N.Y. Sept. 11, 2009) (dismissing market manipulation claim where role of banks in ARS market, including the "possibility that the auctions would fail if Defendants did not intervene in them," was public knowledge).

discussions" in connection with regulatory investigations related to ARS sold by Wachovia, not a write-off of the value of ARS held on Wachovia's balance sheet in 2007 or early 2008.  8/11/08 10-Q, Ex. 19 at 9, 23.[13]

Second, the FC Plaintiffs' claim that Wachovia should have written down these assets "in 2007, at the time of the first failed ARS auction" (¶ 292), is absurd.  *See In re Corning Inc. Sec. Litig.*, 2004 WL 1056063, at *32 (W.D.N.Y. Apr. 9, 2004) (rejecting claim that "defendants unreasonably delayed in writing down … goodwill figures because, as it developed, the downturn in the telecommunications market was more severe than analysts had predicted at the end of 2000"), *aff'd sub nom. Levi v. Corning, Inc.*, 2005 WL 714352 (2d Cir. Mar. 30, 2005).  Courts have long recognized that highly judgmental decisions, such as the setting of a reserve or whether and to what extent to write down the value of securities, should not be second-guessed.  *See Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 851-52 (N.D. Ill. 2003) (allegation that asset write-down should have occurred in the first or second, rather than the third quarter, provided no basis to infer scienter).  Where a plaintiff challenges the timing of a loss, for example, "[m]ere allegations that statements in one report should have been made in earlier reports do not make out a claim for securities fraud."  *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir. 1995); *Caiafa*, 525 F. Supp. 2d at 410 (same); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("If all that is involved is a dispute about the timing of the writeoff, based on estimates of the probability that a particular debtor will pay, we do not have fraud; we may not even have negligence").  This is particularly the case here, where Wachovia's financials have not

---

13  Wachovia ultimately took a charge of $85 million related to ARS held in its trading portfolio as of September 30, 2008, an amount equivalent to 0.01% of its total assets as of December 31, 2007.  *See* 10/30/08 10-Q, Ex. 19 at 6; 2007 10-K, Ann. Rpt. at 71; *see also ECA*, 533 F.3d at 204 (confirming that "the five percent numerical threshold is a good starting place for assessing the materiality" of an alleged omission).

been restated.  *See Malin*, 499 F. Supp. 2d at 148 (rejecting claim that defendants misreported financial data where "there is no allegation here [that] there has been any restatement of any financial statement or that any auditor or actuary has qualified or withdrawn its opinion").[14]  For these reasons, FC Plaintiffs' GAAP allegations relating to Wachovia's potential ARS exposure should be dismissed.

## CONCLUSION

For all of the reasons stated above, the FCFAC should be dismissed pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the PSLRA.

Dated:  New York, New York
        July 14, 2010

                                     FRIED, FRANK, HARRIS, SHRIVER
                                         & JACOBSON LLP

                                     By:_____*/s/ Douglas H. Flaum*_____
                                     Douglas H. Flaum
                                     (douglas.flaum@friedfrank.com)
                                     Israel David
                                     John W. Brewer
                                     Eric A. Hirsch

                                     One New York Plaza
                                     New York, New York 10004-1980
                                     Telephone:  (212) 859-8000
                                     Facsimile:  (212) 859-4000

                                     *Attorneys for Defendants*

---

14  The FC Plaintiffs' claim (¶ 291) that Wachovia improperly recorded underwriting fees related to ARS auctions because the auctions were allegedly an "elaborate scam" is likewise entirely conclusory and insufficiently particularized under Rule 9(b).  The FC Plaintiffs do not even bother to identify the amount of underwriting fees purportedly mis-booked.